TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

333 Constitution Avenue NW. Washington, DC 20001

**FILED**

JUL 3 0 2008

Clerk, U.S. District and
Bankruptcy Courts

Radcliffe Bancroft Lewis, (Litigant in

Person)

1901 15th Street, NW, Apt. #4,

Washington, DC  20009

(202) 302 - 6972

*Plaintiff*

v.

Government of the District of Columbia

Notably:

Washington Metropolitan Police

Department

C/o Custodian of Records

    300 Indiana Avenue, Washington, DC

20001

And

Anderson, Badge # 50, and or 450, and or

750

First District, Washington Metropolitan

Police Department

C/o Custodian of Records

Case: 1:08-cv-01314
Assigned To : Leon, Richard J.
Assign. Date : 7/30/2008
Description: Civil Rights-Non-Employ.

**Complaint for Damages and Declaratory**

**Relief**

**JURY DEMAND**

*Related Case: Lewis v District of Columbia*

*Judiciary, Et al, 1:07-cv-697-rjl*

**See Section VI (2) herein**

RECEIVED

MAY 2 7 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

RECEIVED

JUL 1 6 2008

Clerk, U.S. District and
Bankruptcy Courts

1

**Washington Metropolitan Police Dept.**

**300 Indiana Avenue, NW,**

**Washington, DC 20001**

**And**

**Emmanuel Oghogho, Staff Member**

**Office of Risk Management**

**441 4th Street, NW, Suite 300,**

**Washington, DC  20001**

**As well as**

**Greyhound Bus Company aka Greyhound**

**Lines Incorporated**

**1005 First Street, NE , Washington, DC**

**20002**

*Defendants*

---

## INITIAL COMPLAINT

## I. BASES, CAUSE OF ACTION, JURISDICTION AND VENUE

### A. Bases

*Pursuant to United States Constitution Amendment 4, and, or 42 USC 200b(2)*

**UNREASONABLE SEARCH AND SEIZURE AND WRONGFUL EJECTION**

Where the District of Columbia and the Greyhound Bus Company by and through its employees and assigns, particularly the agent(s) of the Metropolitan Police Department indicated above endeavoured to publicly humiliate Radcliffe B. Lewis, the plaintiff hereto by ousting him from a public facility in front of others and by taking his property from him, all without just cause, and

*Pursuant to United States Constitution Amendment I, and, or 42 USC § 12203*

**RETALIATORY DENIAL OF DUE PROCESS AND INFRINGEMENT OF PRIVACY**
Where the District of Columbia endeavored to cover up evidence of the occurrence and refuse to address Lewis's subsequent claims, holding out that Lewis must disrobe his private information for no just or relevant cause in order to gain administrative consideration thereto, and

*Pursuant to United States Constitution Amds. I and IV, and 5 U.S.C. § 552a (as amended)*

Where the District of Columbia by and through its agent, Oghogho) refuse to grant access to redress of Plaintiff's grievance in retaliation against Plaintiff's refusal to relinquish his right against invasion of privacy.

## B. Cause of Action

*Pursuant to 42 USC § 12188 and such other consideration the Court may deem proper and just*

**PUBLIC HUMILIATION AND WRONGFUL INFLICTION OF MORTIFYING SHAME**
**WHERE-THUS** Lewis having been subjected to the fright, shame, mortification, and indignity in the manner in which the defendants hereto have carried out their violative acts

against him, is thus publicly humiliated and deeply embarrassed, and even subject to further disparagement by the harassment of the matter, and remains mortified as a result.

**WHEREFORE** Plaintiff Radcliffe B. Lewis now comes before this honorable Court to present and represent his claims as a litigant in person to seek appropriate relief commensurate with the damages inflicted upon him, and necessary declarations as well.

### C. Jurisdiction and Venue

**1.** Radcliffe B. Lewis, the Plaintiff is a resident of the District of Columbia of the age of majority.

**2.** The Government of the District of Columbia operates by and through the District of Columbia Metropolitan Police Department, and its constables and other officers therein, as well as the the Office of Risk Management.

**3.** The Greyhound Bus Company is a foreign corporation located in the state of Delaware, but with headquarters in the state of Texas.

**4.** As the assailants of the Plaintiff wore uniforms depicting that of the Metropolitan Police Uniforms, but shielded their badges, the Plaintiff is able only to state the numbers indicated above as discerned worn by the principal assailing officer only, (to wit: "#50", "450", or "750") with the identity of additional officers as indicated in the body of this Complaint and, or its attachments.

**5.** As indicated by the rules that the Plaintiff relies upon, the Plaintiff comes before this Court with federal questions, of which this Court holds original jurisdiction. Moreover, not less than one opponent hereto resides outside the jurisdiction of the District of Columbia. It being that the District of Columbia adamantly refuses to exercise reasonable administration of the matter and

time is of the essence, it is sufficient for this Court, - and Plaintiff urges this Court, to accept jurisdiction, and venue in keeping with its ability to do so.

## II. INCIDENTS REGARDING SEIZURE, EJECTION, AND PUBLIC HUMILIATION

*The following statement is repeated from the complaint as initially submitted to the Districts Office of Risk Management.* ~~See Attachment #1.~~

### A. Incident

**1.** On 24 May 2005 at about 0200 I was seated inside the Greyhound bus station in a dining area there, supping tea that I purchased from an in-station canteen and preparing to eat a burrito that I also purchased there. I was also performing a sketching exercise on a sheet of paper.

**2.** At about 0223 a black person with an appearingly bald head dressed in a dark blue jumpsuit/ coverall with insignias of the Washington DC Metropolitan Police Department came up to me and asked, "What is all this?"

I replied, "I am practicing my drawings."

It then asked, "Do you have a bus ticket?", and I replied to it, "No."

It then stated, "You have fifteen minutes to leave."

I began to pack my belongings (paper and pencils) to leave, and was preparing to complete my meal that I purchased, when less than three minutes thereafter, it returned and stated, "You have ten minutes to leave."

**3.** I therefore picked up my (still un-opened) burrito and walked over to the canteen cashier and asked for a refund, explaining that I am not able to eat the burrito fast enough to satisfy their police officer who is ordering me to leave. The officer then intervened and stated "You (need to) leave now." It then interrupted the cashier and food service workers who where deliberating the

unusual request for a refund, and stopped them from deliberating as to whether to provide the refund.

**4.** I then requested, "Call a supervisor", and it responded, "You can call whoever you (want)."
I therefore called 911 and requested a supervisor. I was not able however to effectively report to the dispatcher the name and badge number that it wore, because even though it orated these things, it had a pen in front of the first digit of the badge number with the last two remaining digits (three total) were "50". I continued to pack my belongings while it called for backup. A white person similarly dressed showed up and began to don black colored gloves less then three feet away from me while I packed my belongings. The first 'officer' attempted to engage me in conversation but I responded, "Look, I am not saying anything to you, I am following your order and I am packing to leave."

**5.** Upon gathering my belongings, I walked toward to the cashier, but it intervened again and went to the counter first, instructing the service workers not to provide the refund. It also picked up the burrito, there at the cashier's counter, and placed it in a white plastic bag.

**6.** I exited the building and it came out behind me and process served me the burrito by dropping the white plastic bag with the burrito in it before my feet. It then added, "(As a matter of fact) I don't ever want to see you inside my building again."

**7.** I stayed there awaiting a supervisor at the scene and a police vehicle #151 came up and drove passed twice but did not stop, then drove away.

**8.** I therefore called 911 again and reported the appearance of the police vehicle and requested if the supervisor showed up yet. The dispatcher responded indicating that there was no record of

the previous call and requested the address where I was located, and I gave "1005 First Street, NE."

**9.** Another police vehicle then came on the scene and I relayed the information, and requested assistance in preserving the evidence of the occurrence to which the driver responded that I will not receive assistance in that regard but that I may go to the Second District and file a complaint.

### B. Environment

At the time of the above incident there were several people sleeping while seated on the canteen seats. This included a white elderly person who at first appeared to be sleeping or attempting to sleep, but then began shuffling scraps of paper, but that person was not accosted by the person who accosted me. Outside were several panhandlers, and other persons. The ambient temperature outside was between 55 and 61 degrees Fahrenheit, and the place was a little damp after a light rain.

### C. Background Information

**1.** For about the past two weeks previous, I have entered the Greyhound Bus Station at night and practiced my sketches, drink tea, and purchase and ate of the menu of the in-station canteen. I also paid to and played at least one of the video games installed at the Greyhound facility. After two or three hours I always left the station and went home to sleep.

**2.** The station security have always ousted persons who slept without a bus ticket, and I affirmed with the staff that I am not of that caliper, and that I am here merely passing through on may way home, but that I found the environment conducive to practice my sketches without interrupting others or attracting a crowd (in excess of five unrelated adults) at any one time. I affirmed with the canteen staff that if the security personal are inclined to oust all persons who do not have a bus ticket, then I have no reason to be there, and the staff personnel assured me that the security

personal at Greyhound were only interested in ousting those who exhibited signs of vagrancy, ie: sleeping.

**3.** All other security personnel that I have encountered have carried out their duties in this wise. I am not aware of any complaints from any person, Greyhound employee or otherwise, nor have I ever been admonished for my activities or manner of my abouts. All other employees at Greyhound that I have encountered have exhibited a level of decorum to suggest they are highly appreciative of my presence the fact that I practiced sketches there.

**4.** At no time was I ever warned or forewarned that I should cease, and, or desist from entering the premises in the manner of my abouts or in terms of the fact that I am a sketch artist. At no time was I warned or forewarned that I am allotted only a limited amount of time to eat food that I purchased from the canteen. At no time was I warned or forewarned that I may be summarily ordered to leave the premises just because I casually dine at the Greyhound canteen from money that I spend there.

**5.** On at least on occasion in the past, I have witnessed a person who appear to be Washington Metropolitan Police Department Officer actually draw its pistol and point it at an elderly person who it was ousting from the building, but a saw no apparent follow-up activity to indicate the 'officer' actually made and incident report regarding its resort to its deadly weapon.

### III. ATTEMPTS TO RECTIFY THE MATTER

**1.** In addition to the statements above, please note that on the night of 24 May 05, I attempted of file a PD99 statement with the Second District Police Station, but one office L. M. Myers, Badge

# 1636, the front desk attendant, was unable to accept the complaint because we were unable to decipher the identity of the alleged police officer (suspect) who accosted me.

**2.** I therefore sought to file a regular report for the disturbance that the suspect created, as well as for the lost property. I spoke to a detective by telephone who indicated that I had to go to First District to do that, but when I went to First District, the desk sergeant refused to take the report because in his opinion I walked away from my burrito that was on the sidewalk and therefore I caused the loss of my own burrito. I asked the sergeant (politely) were I to take his soda and dropped it on the ground if he would do nothing about it, and he indicated he would simply pick up his soda and go about his business.

**3.** Furthermore, I have submitted a preliminary draft of this letter within days of the incident to one of the alleged shift supervisors of Greyhound (the location of the incident) but I have not received any response to this day.

**4.** Finally, about a month later I passed by the Greyhound bus stop and I saw the suspect in front of the building. Despite feeling threatened, I dared to inquire as to his name and badge number and to my best recollection I heard it stated, "Anderson", as well as the badge number, but it then took one step back and placed its right arm in form of its chest with the palm hooked down as if it was prepared to draw its pistol, and I turned to left feeling even more threatened that I did before. As I departed, I heard it say to another person standing beside it, "That mother-fucker right there, wha- they gonna do, fire me?"

I left.

## IV. SUMMARY

## A. Of Material Issues:

**1.** I was a paying patron of Greyhound. I purchased in the course of two hours, at least two dollars in video games, two dollars in food, and about two dollars in beverages.

**2.** Greyhound sold these items to me without any question as to whether I possessed a Greyhound/Peter Pan bus ticket.

**3.** No warning of restrictive decrees pertaining to the patrons without bus tickets was posted on the menu charts of the canteen.

**4.** With the proper accumulation of veritable evidence, it can be ascertained and affirmed that the food service workers and civilian (other than police) employees and contracted members of Greyhound were complicit with the acceptance of patrons without bus tickets being allowed to purchase food and eat it there within the Greyhound station.

**5.** Given the here-above conditions as a paying patron of Greyhound, I am convinced that I was well within my civil rights to sit and eat in a casual setting as the canteen affords.

**6.** The complimentary gestures and assurances of other greyhound assigns, and, or, employees reassured me that my actions where well within the scope of law of Greyhound's intents and decrees.

**7.** The suspect who is the subject of this complaint apparently sought to enforce a mandate by the Greyhound Bus Company (an alleged private company) that "no one is allowed to be in the bus station without a bus ticket."

**8.** It provided a direct decree to me to vacate the premises in fifteen minutes.

**9.** Three minutes did not pass before it accelerated the time allotted down to "ten minutes" mooting the original decree by less than twelve minutes.

**10.** Upon my requesting a refund based upon an apparent conflict as to the scope of Greyhounds decrees, the suspect then accelerated the decree by providing me no time to exit the premises. It, the suspect, was not on any emergency call or assignment, nor was it preoccupied with any other

disruptions at the time. In so accelerating, it, suspect, contravened the food service management of Greyhound, an internal issue there, but one which nonetheless effectively made it the pre-eminent officer of Greyhound Corporation on the premises. In so doing, it deprived me of the following:

**11.** By ordering me out to the premises, the suspect deprived me of the dining experience;

**12.** By contravening the food service workers and interrupting the processing or attempted processing of the requested refund the suspect deprived me of the value of my purchase;

**13.** By separating me from my food and forcing me under threat of the use of enforcement powers of the State, and upon the food being out of my sight even, the suspect completely deprived me of my property.

**14.** Moreover, in the performance of its feats, the suspect utilized the full authority of the police powers of the District of Columbia including the inherent threat of bodily harm towards me. The suspect also called for backup and another like dressed entity came upon the scene donning gloves and exhibiting the intent to proceed to touch me in an undesirable way. At all times throughout this encounter, the suspect acted in a belligerent, dramatic, and thereby threatening manner, and I was woefully threatened thereby.

**15.** The affront did not end there; after I exited the premises, the suspect, having placed my previous purchases into an unknown plastic bag, approached me and expected me to take possession of this breached chain of possession bag, and drop the bag on the ground in front me.[1] I was already in an entrapping situation, and humiliated, and it humiliated me more.

**16.** Moreover, in all ways this incident is being already degraded by the Metropolitan Police Department, from the ignorance of the first 911 call place at **0228 on 25 Mar 05**, to the refusal of on-duty members of the Police Force to take a report, and assist in the procurement of evidence that:

**17.** The incident occurred, a matter that may be affirmed by the preserving of video tapes and witness statements,

**18.** The affirmation of the actions of the suspect so that a determination may be made as to whether indeed it violated any laws or the regulations of the MPDC,

**19.** Whether any claims are justified, and if justified whether they are action-ably sustainable.

**20.** Finally the suspect has shown no remorse for its actions and upon further inquiry resorted to the use of expletives and assuming postures that amplified the gravity of its threats from potential arrest and bodily touching to a proclivity for the use of its government provided deadly weapon (its prepared posture to draw its pistol).

### B. Of Claims

1. **DISCRIMINATION (HARASSMENT) - The suspect discriminated against a Black patron (Complainant) in a dining facility by accosting that patron and creating a disturbance of that paying patron even while a sleeping and non-paying white loiterer was within ten paces of the suspect and the paying Black patron; at no time did the suspect attempt in any way to disturb the sleeping white loiterer; WHEREFORE Complainant evaluates this action on the part of Respondent #1 to be a violation of 42 USC § 2000a et seq. and that were other respondents to concur with the actions of Respondent #1, to be claimable as General Damages of up to two million (US$2,000,000.00) dollars, and that this action is review-able within the scope of DC ST § 5-1107 TEXT (a) (1) and TEXT (a) (4).**

2. **DISCRIMINATION (DISPARATE ACTION) - The suspect ousted the paying Black patron (Complainant) from a dining facility without just cause: WHEREFORE Complainant evaluates this action on the part of Respondent #1 to be the contributing disparate action in support**

of suspect's discriminatory intent and in any event that were other respondents to concur with the actions of Respondent #1, evaluates this disparate act to be claimable as General Damages of not less than five hundred thousand (US$500,000.00) dollars, and that this action is review-able within the scope of DC ST § 5-1107 TEXT (a) (1).

3. UNREASONABLE SEARCH AND SEIZURE - The suspect took and carried away Complainant's property without just cause and thereby deprived Complainant of his property to the hurt of Complainants peace of mind; WHEREFORE Complainant evaluates this action on the part of Respondent #1 to be a violation of Complainants inherent rights as acknowledged and pursuant to the Fourth Amendment, Constitution of the United States and CLAIMS Compensatory Damages of Two Dollars and 9 Cents (US$2.09), as well as General, and or, Punitive Damages of five thousand ($5,000.00) dollars, and that this action is review-able within the scope of DC ST § 5-1107 TEXT (a) (1), TEXT (a) (2), and TEXT (a) (3), individually, and, or as such review reads against such TEXT's jointly.

4. DISCRIMINATION (RETALIATION) - The suspect levied against Complainant retaliation because Complainant called 911 to ask for a supervisor. Suspect orated a barring notice without documentation approved or otherwise. It amounts to a threat of intent to harm Complainant or effect recriminate measures against Complainant in any future encounter without just cause, and Complainant is threatened thereby: WHEREFORE Complainant evaluates this action on the part of Respondent #1 and its immediate cohorts to be a violation 42 USC § 2000a et seq. with respect to retaliation, an that were other respondents to concur with the actions of Respondent #1

and its immediate cohorts to be claimable as General Damages of two million (US$2,000,000.00) dollars, and that this action is review-able within the scope of DC ST § 5-1107 TEXT (a) (5), and TEXT (a) in general.

5. **CONTRIBUTORY NEGLIGENCE (RETALIATORY THREATS)** - The Washington DC Metropolitan Police Department and supervisors thereof, created an environment conducive to suspect's disparate treatment of Complainant as exemplified and in fact carried out by the quick response to suspect's call for back-up by the second and currently unidentified suspect who also exhibited threatening maneuver (standing close and preparing to touch and harm Complainant) without even scintilla of investigations into the matter (this second suspect wholly subordinating to the will of the first suspect); WHEREFORE Complainant evaluates this action on the part of Respondent #3 to be a tortuous act in violation of DC ST § 35-302, and claimable as General Damages in the amount of five thousand (US 5,000.00) dollars, and that this action is review-able within the scope of DC ST § 5-1107 TEXT (a) (3) and TEXT (a) in general.

6. **CONTRIBUTORY NEGLIGENCE (OBSTRUCTION)** - The Washington DC Metropolitan Police Department and supervisors thereof, neglected Complainant and the incident so as to undermine evidence that:The incident and offences above occurred,

   1. The Complainant was in no wise a contributor to his disenfranchisement – that is—Complainant was a law abiding person minding his own business and was in no wise disturbing the peace; nor did Complainant resist the orders of

the suspect, which was identifiable as a police (peace) officer, nor was Complainant unruly in any way thereafter.

2. The incident that occurred and the derivable evidence was sufficient to affirm probable cause if not clear and convincing proof that the suspect discriminated against Complainant as stated in Claim #1 above, as well as

3. Evidence of all the other elemental claims mentioned here-above.

WHEREFORE Complainant evaluates this action on the part of Respondent #3 to be a tortuous act in violation of DC ST § 35-302, and CLAIMS General Damages in the amount of four million (US$4,000,000.00) dollars, and that this action is review-able within the scope of DC ST § 5-1107 TEXT (a) (1), TEXT (a) (3), Text (b) and TEXT (g) (5), and is review-able as a matter of mediation in keeping with TEXT (g) (4).

7. CONTRIBUTORY NEGLIGENCE (UNREASONABLE SEARCH AND SEIZURE AND DISPARATE TREATMENT, HARASSMENT, AND DISCRIMINATION) - The Greyhound Bus Company by way of its shady intents and decrees created an environment conducive to the suspect's taking and carrying away of Complainant's property without just cause and thereby deprived Complainant of his property to the hurt of Complainants peace of mind; WHEREFORE Complainant evaluates this action on the part of Respondents #1 and #2 to be a tortuous act in violation of DC ST § 35-302, and, or, in any event a violation of the Uniform Commercial Code, as well as

violation of Complainant's inherent rights as acknowledged and pursuant to the Fourth Amendment, Constitution of the United States and CLAIMS Punitive Damages of two million and five thousand ($2,005,000.00) dollars, and that this action is review-able within the scope of DC ST § 5-1107 TEXT (a) (1), TEXT (a) (2), TEXT (a) (3), and TEXT (a) (4), individually, and, or as such review reads against such TEXTS's jointly.

8. INSULTING AND DEMEANING CONDUCT – Anderson exhibited unbecoming conduct by exercising unnecessary force and upon request by Complainant pursuant to TEXT (a) (6), resorted to abusive language to demean complainant, WHEREFORE Complainant evaluates these actions on the part of Respondent #1 to be a violation of DC ST § 5-1107 TEXT (a) (2), and TEXT (a) (3) and CLAIMS General Damages of five thousand (US$5,000.00) dollars and Punitive Damages of five thousand ($5000.00) dollars.

9. CONTRIBUTORY NEGLIGENCE (DISCRIMINATION) - The Washington DC Metropolitan undervalues the significance of this incident as a matter of aggravatingly disparate treatment of a paying patron to an issue of a $2.00 burrito; WHEREFORE Complainant evaluates this action on the part of Respondent #3 to be a violation of 42 USC § 2000a et seq. and CLAIMS General Damages of two million (US$2,000,000.00) dollars and that this action is review-able within the scope of DC ST § 5-1107 TEXT (a) (1) and TEXT (a) (3), and is review-able as a matter of mediation in keeping with TEXT (g) (4).

10. **DEPRIVATION OF RIGHTS UNDER COLOR OF LAW - There exists a question as to whether it is appropriate for off-duty police officers to be allowed to utilize the police powers of the State in carrying out the duties of private clients especially without any warning to members of the public as to the moment of when a police officer is on-duty, where impartiality of law enforcement is preserved, as opposed to when such officer is off duty, and thus when partially to their private payers, and, or, purse fillers, are in effect. To this day I do not know if the entire First District, or the entire Police Department for that matter, was on duty, or off duty and paid out by Greyhound. WHEREFORE Complainant evaluates this action on the part of Respondents #1, #2, and #3, together along with their cohorts, to be a conspiracy to intentionally deprive Complainant and any other member of the public unawares as of the free enjoyment of the impartial protection afforded by way of the police powers of the State as afforded by the Fourteenth Amendment of the United States Constitution, for they "disguise on the highway, or on the premises of another, (and their one another) with intent to prevent or hinder (Complainant's and others) free exercise or enjoyment of any right or privilege so secured" as pursuant to 18 USC § 241, a violation thereof, and Complainant CLAIMS Specified Damages of eleven thousand ($11,000.00) dollars, General Damages of two million ($2,000,000.00) dollars, and that this action is review-able within the scope of DC ST § 5-1107 TEXT (a) (1) and TEXT (a) (3), TEXT (a) (6), TEXT (b), TEXT (c), TEXT (g) (2) and is review-able as a matter of mediation in keeping with TEXT (g) (4), and (5). Furthermore, this matter is tortuous in its scope, and such tort may be outside the**

**scope of this instant venue, WHEREFORE Complainant reserves the option to consider this action according to such tort, perchance this matter is in its entirety is not resolved by this instant filing.**

-----------------------------------------------------------------------

### V. FURTHER ATTEMPTS TO OBTAIN ADMINISTRATIVE REDRESS

1. The foregoing constitute most of the statements in the First Complaint to be lodged regarding these incidents. It provided an opportunity for the Government and cognizant members of the public to address this matter and the claims above, and at the very least to figure out why this officer (Anderson, per say), to wit: Respondent #1, who is already armed with a lethal instrument would ever be driven to disturb the peace of an otherwise paying patron in any commercial dining facility, who was minding his own business.

2. The Complaint provided for all parties addressed to negotiate the claims therein and the values thereof, especially in light of the undermined and unpreserved evidence despite Complainant's best efforts to see to such, at least before efforts to undermine his character in response thereto by way of the probable constructed affidavits and such.

3. There is nothing civil about the way the police *en-mass* have acted thus far. Moreover the leaders of Greyhound have also received the first complaint , and so fare wholly neglect the matter.

4. The value of the Complaint at that time amounted to ten million and thirty and one thousand and two ($10,031,002.09) dollars and nine cents.

5. However upon receipt of Plaintiff's formal administrative complaint to the District's Office of Risk Management back on or about 20 September 2005, the District by and through its agent on "Emmanuel Oghogo" on 3 October 2005

demanded of Lewis to divulge his "social security or business tax identification number" in order to "expedite" the claim. Lewis did not so divulge, and the claim was not expedited by the District.

6. On or about 7 March 2008, a clerk in the District's Office of Risk Management indicated that the claim was dismissed, but Lewis has not received a letter so indicating to this day.

7. Despite the Plaintiff's attempts to have the District act on the claims, nothing else has been done.

Finally, Plaintiff indicated in his administrative complaint that the claimable value at suit would be up to

twelve million and five hundred and thirty and six thousand and two (US$12,536,002.09) dollars and nine cents.

## VI. CLAIMS FOR RELIEF

In light of the foregoing, and applicable laws as cited, plaintiff now restates his claims here-above and adds that a cursory look at 42 USC 12188(B)(5) indicates that this Court is entitled to consider "any good faith effort or attempt to comply with" that law. The Court should consider two factors in assessing the relief's sought:

a. That the District of Columbia failed to act in addressing this complaint, and failed to "expedite" (Ogogho) the claims because Plaintiff sought to protect his privacy rights and not divulge his social security number, and

b. That in a related case, namely *Lewis v District of Columbia Judiciary, et al, Case No: 1:07-cv-697-rjl,* in this court, the plaintiff is already pursuing action against the United States Department of Justice because that department blocks the path to the Office of Civil Rights. As it is usually the office of the Attorney General of the United States that is charged with investigating civil rights complaints and forwarding civil actions against assailants, the remedies usually available pursuant to sections 12188 et seq are usually address to this or other court via the Attorney General. The plaintiff is already at harm the office of the Attorney General of the United States which block the path ot the Office Civil Rights, and for all practical purposes, such civil rights complaint are terminable on arrival to that Commission in any event because by the time the plaintiff would have had been able to file it the evidence, notably, the traceable identity of the white loiterer indicated in section IV, B. 1 hereto, would have evanesced, (just like when a Metropolitan Police Officer retrieves his pistol from its holster, points it someones head and immediately returns it to its holster), the government there at that time, the "supervisors" refusing to investigate the matter, even though the plaintiff called for the police supervisors. Even without civil rights per say, the unreasonable search and seizure, wrongful eviction (false arrest) subsequent denial of due process, and affront against the plaintiff's privacy rights remains, and the plaintiff remains mortified, he has not been able to practice or make another sketch since that fateful day. This cannot be discounted.

## 1. FOR COMPENSATORY RELIEF

Because the defendants have not addressed in any reasonable way the claims or allegations or complaints or whinings or charges or filings or addressings or letters or perceptions or assertions of the now plaintiff, and has not so much as even balked at the monitory values that the plaintiff

demands in this communiques, there is no incentive on the part of the plaintiff to reconsider. Consequently Plaintiff seeks **COMPENSATORY DAMAGES in the amount of twelve million and five hundred and thirty and six thousand and two (US$12,536,002.09) dollars and nine cents.**

## 2. FOR DECLARATORY RELIEF

Because the defendants acted by and and through police officers in uniform afforded by tax payers, but assigned to protect and serve the interest of a corporation or other specialized body up over and above members of the public otherwise, the plaintiff seeks only that this Court **Cause an Order to be** such that when performing moonlighting duties, **officers of the District of Columbia be barred from wearing their uniforms, barred from wearing their service ballistic thrusting devices (guns), barred from making police arrests, and ordered to where affixed attire sufficient for the public to recognized them as performing security services for hire by private organizations - notably a pink armband.** This should suffice.

## 3. FOR DECLARATORY RELIEF

Finally, it being the District of Columbia has not even been able to provide notification that it refuses, or fails to act such that the Plaintiff is able to proceed with a timely filed related civil rights complaint the evidence affixed related to the incident and the issue of public accommodation, the Plaintiff here seeks for an Order to be declaring that he has indeed exercised due diligence to provide the defendants optimal opportunity to address his claims (be it individually on en mass) and is now entitled to access to this court for the purpose of prompt address of this Action as a matter of law. Note *Std., Civ. Jury. Inst. 24.05.*

So now comes the Plaintiff respectfully before this Honorable Court.

Signed on this 27th Day of May 2008:

Radcliffe B. Lewis, Litigant in Person

1901 15th Street, NW, #4

Washington, DC 20009

## VERIFICATION

I hereby affirm under penalty of perjury that the foregoing is true to the best of my knowledge and recollection.

Signed on this 27th Day of May 2008:

Radcliffe B. Lewis, Litigant in Person

## Certificate of Service

I hereby affirm under penalty of perjury that on this 27th day of May 2008, I cause a copy of this Complaint for Damages and Declaratory Relief to be remitted by way of hand delivery to the following parties:

Government of the District of Columbia

C/o Office of the Secretary of the District of Columbia, Stephanie D. Scott

    1350 Pennsylvania Avenue, NW, Ste 419, Washington, DC 20004,

and to

Washington Metropolitan Police Department,

Anderson, Badge # 50, or 450, or 750, First District

Via: Office of Risk Management, 441 4th Street NW Suite 800S Washington, DC 20001,

and to

Greyhound Bus Company, aka Greyhound Lines Incorporated

C/o CT Corporation, 1015 15th St NW, Washington, 20005,

Signed on this 27th Day of May 2008: _____

Radcliffe B. Lewis,

1901 15th Street, NW, #4, Washington, DC  20009

L
08-1314
RJL

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

**I (a) PLAINTIFFS**

RADCLIFFE B. LEWIS

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   11001
(EXCEPT IN U.S. PLAINTIFF CASES)

PRO SE

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

**DEFENDANTS**

GVT. OF D.C. ET AL

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Case: 1:08-cv-01314
Assigned To : Leon, Richard J.
Assign. Date : 7/30/2008
Description: Civil Rights-Non-Employ.

JURY ACTION

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 2 U.S. Government
Defendant

☑ Federal Question
(U.S. Government Not a Party)

☐ 4 Diversity
(Indicate Citizenship of Parties
in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

**☐ A. Antitrust**

☐ 410 Antitrust

**☐ B. Personal Injury/
Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**☐ C. Administrative Agency
Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
Administrative Agency is Involved)

**☐ D. Temporary Restraining
Order/Preliminary
Injunction**

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

## ☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Immigration**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus- Alien
Detainee
☐ 465 Other Immigration Actions

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
defendant

☐ 871 IRS-Third Party 26
USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of
Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
Rates/etc.

☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt
Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
Exchange
☐ 875 Customer Challenge 12 USC
3410
☐ 900 Appeal of fee determination
under equal access to Justice
☐ 950 Constitutionality of State
Statutes
☐ 890 Other Statutory Actions (if not
Administrative Agency Review
or Privacy Act)

| □ **G.** *Habeas Corpus/ 2255* | □ **H.** *Employment Discrimination* | □ **I.** *FOIA/PRIVACY ACT* | □ **J.** *Student Loan* |
|---|---|---|---|
| □ 530 Habeas Corpus-General <br> □ 510 Motion/Vacate Sentence | □ 442 Civil Rights-Employment <br> (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) <br><br> *(If pro se, select this deck)* | □ 895 Freedom of Information Act <br> □ 890 Other Statutory Actions (if Privacy Act) <br><br> *(If pro se, select this deck)* | □ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| □ **K.** *Labor/ERISA (non-employment)* | ⊙ **L.** *Other Civil Rights (non-employment)* | □ **M.** *Contract* | □ **N.** *Three-Judge Court* |
|---|---|---|---|
| □ 710 Fair Labor Standards Act <br> □ 720 Labor/Mgmt. Relations <br> □ 730 Labor/Mgmt. Reporting & Disclosure Act <br> □ 740 Labor Railway Act <br> □ 790 Other Labor Litigation <br> □ 791 Empl. Ret. Inc. Security Act | □ 441 Voting (if not Voting Rights Act) <br> □ 443 Housing/Accommodations <br> □ 444 Welfare <br> ⊙ 440 Other Civil Rights <br> □ 445 American w/Disabilities-Employment <br> □ 446 Americans w/Disabilities-Other | □ 110 Insurance <br> □ 120 Marine <br> □ 130 Miller Act <br> □ 140 Negotiable Instrument <br> □ 150 Recovery of Overpayment & Enforcement of Judgment <br> □ 153 Recovery of Overpayment of Veteran's Benefits <br> □ 160 Stockholder's Suits <br> □ 190 Other Contracts <br> □ 195 Contract Product Liability <br> □ 196 Franchise | □ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding   □ 2 Removed from State Court   □ 3 Remanded from Appellate Court   □ 4 Reinstated or Reopened   □ 5 Transferred from another district (specify)   □ Multi district Litigation   □ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 USC 1983

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS   □ ACTION UNDER F.R.C.P. 23   **DEMAND $**   Check YES only if demanded in complaint   **JURY DEMAND:** ⊙ YES   □ NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   ⊙ YES   □ NO   If yes, please complete related case form.

DATE 7.30.08   SIGNATURE OF ATTORNEY OF RECORD   NCD

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

\forms\js-44.wpd