UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| RADCLIFFE BANCROFT LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-1314 (RJL) |
| | ) | |
| GOVERNMENT OF THE | ) | |
| DISTRICT OF COLUMBIA *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION
August 15, 2009

In this civil action, plaintiff, proceeding *pro se* and *in forma pauperis*, alleges that on May 24, 2005, an officer of the Metropolitan Police Department ("MPD") forced him to leave the Greyhound Bus Station apparently without cause. He sues the District of Columbia, an MPD officer identified only as Anderson, Emmanuel Oghogho of the District's Office of Risk Management, and Greyhound Bus Company, which has been dismissed from the case. *See* Order of November 21, 2008 (granting Greyhound Lines, Inc.'s motion to dismiss as conceded). The District of Columbia moves to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that the case is barred by the statute of limitations and that plaintiff has failed to state a claim against the municipality.

Upon consideration of the parties' submissions and the entire record the Court grants the District's motion to dismiss for failure to state a federal claim.[1] In addition, the Court dismisses

---

[1] Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over any remaining claims against the District of Columbia.

*sua sponte* the complaint against Emmanuel Oghogho whom plaintiff sues for actions taken in his official capacity as an "agent" of the District via its Office of Risk Management. Compl. at 3, 19; see *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (an official-capacity lawsuit "is, in all respects other than name, to be treated as a suit against the entity").[2]

## I. BACKGROUND

Plaintiff alleges that he was seated in the dining area of the Greyhound bus station "supping tea . . . preparing to eat a burrito . . . [and] performing a sketching exercise on a sheet of paper," Compl. at 5, when a black MPD officer (Anderson) told him that without a bus ticket he had fifteen minutes to leave. *Id.* "[L]ess than three minutes thereafter," the officer told plaintiff that he had ten minutes to leave. *Id.* Plaintiff asked the cashier for a refund "explaining that I am not able to eat the burrito fast enough to satisfy their police officer who is ordering me to leave." *Id.* The officer then ordered plaintiff to leave immediately. *Id.* Plaintiff "called 911 and requested a supervisor," but was unable "to effectively report . . . the [officer's] name and badge number" because the badge was partially concealed. *Id.* at 6. A white officer responded to the first officer's call for backup. *Id.* When plaintiff approached the cashier again, the first officer "instruct[ed] the service workers not to provide a refund [and] picked up the burrito . . . and placed it in a white plastic bag." *Id.* When plaintiff left the building, the officer told plaintiff

---

[2] As to the remaining defendant, Officer Anderson, the docket shows a return of service indicating that the United States Marshals Service personally served "Metropolitan Police Officer Anderson-First District-C/O Custodian or Records" via service upon "file clerk" Jeanne Schofield. Dkt. No. 4. Anderson has not appeared in the case, but the proof of service based on information supplied by plaintiff in the complaint is wholly deficient. Because Officer Anderson is the only defendant directly implicated in the alleged wrongdoing, the Court will allow time for plaintiff to provide correct information about this defendant so that--in the unlikely event that plaintiff is successful--the court officers can fulfill their duty under 28 U.S.C. § 1915(d) to serve Anderson with process.

that he did not want to "'see [him] in my building again.'" *Id.* Plaintiff called 911 again and was told that there was no record of his previous call. When plaintiff relayed the incident to another officer who had driven to the scene and requested assistance with "preserving the evidence of the occurrence," he was denied assistance but told that he could file a complaint with the Second District. *Id.* at 7. "On the night" of the incident, plaintiff attempted to file a report with the Second District but "the front desk attendant was unable to accept the complaint because we were unable to decipher the identity of the alleged police officer . . . who accosted me." *Id.* at 9. "[A]bout a month later [while passing] the Greyhound bus stop," plaintiff saw the officer and "dared to inquire as to his name and badge number." *Id.* To plaintiff's "best recollection [he] heard it stated 'Anderson,' as well as the badge number." *Id.*

The Clerk of Court initially received plaintiff's complaint on May 27, 2008, and formally filed it on July 30, 2008, one day after the granting of plaintiff's motion to proceed *in forma pauperis*. Plaintiff sets forth the following claims: "Unreasonable Search and Seizure and Wrongful Ejection"; "Retaliatory Denial of Due Process and Infringement of Privacy"; and "Public Humiliation and Wrongful Infliction of Mortifying Shame." *Id.* at 1-3. He also claims that he was discriminated against based on his race because Officer Anderson accosted him, "a [paying] Black patron . . . while [not disturbing] a sleeping and non-paying white loiterer [who] was within ten paces of [the officer]." *Id.* at 12.

## II. DISCUSSION

1. <u>The Case is Not Time Barred</u>

Reading the complaint liberally, the Court considers the complaint as brought under 42 U.S.C. § 1983 and the District's common law. The maximum time permitted for bringing such

claims is three years from the date the action accrued. *See Lewis v. Bayh*, 577 F. Supp.2d 47, 51 (D.D.C. 2008) ("In the District of Columbia, D.C. Code § 12-301(8) governs [§ 1983] claims and provides a [catch-all] three-year statute of limitations."); *see id* at 52 ("D.C. Circuit law clearly provides one-year or three-year statutes of limitations for § 1983 . . . claims.") (citations omitted). The District argues that plaintiff's § 1983 and common law claims are barred by the District's three-year statute of limitations, but it erroneously relies on the filing date of July 30, 2008. The Court is familiar with the Office of the Clerk's processing of a complaint submitted with a motion to proceed *in forma pauperis*. It takes judicial notice of the administrative delay that occurs in most instances between the Clerk's receipt of the complaint and the formal filing or docketing of the complaint. In such circumstances, the Clerk's receipt date controls for purposes of timeliness. *See Guillen v. National Grange*, 955 F. Supp. 144, 145 (D.D.C. 1997) (finding a Title VII litigant "not responsible for the administrative delay associated with the Court's review of petitions to proceed *in forma pauperis*. . . . [T]he presentation of a complaint [and] a petition to proceed *in forma pauperis* tolls the ninety-day period of limitations . . . ") (citations omitted); accord *Okereh v. Winter*, 600 F. Supp.2d 139, 141-42 (D.D.C. 2009).

In his opposition, plaintiff correctly asserts that May 24, 2008 (the limitations deadline), was a Saturday and Monday, May 26, 2008, was a holiday. *See* Pl.'s Response to the District of Columbia's Motion to Dismiss [Dkt. No. 24] at 5. The Clerk's receipt of the complaint on the next business day of May 27, 2008, therefore constitutes a timely filed action. *See Okereh*, 600 F. Supp.2d at 142 ("Because June 2 was a Saturday, Mr. Okereh had until Monday, June 4, 2007, to file his complaint.").

4

2. Plaintiff Fails to State a Federal Claim Against the District of Columbia

A court may dismiss a complaint on the ground that it fails to state a claim upon which relief can be granted if, assuming the alleged facts to be true and drawing all inferences in the plaintiff's favor, it appears that the plaintiff can prove no facts "consistent with the allegations in the complaint" to support the claim. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563, 127 S.Ct. 1955, 1969 (2007); accord *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). "[T]he pleadings [must] suggest a 'plausible' scenario to 'sho[w] that the pleader is entitled to relief[.]'" *Tooley v. Napolitano,* 556 F.3d 836, 839 (D.C. Cir. 2009) (quoting *Twombly,* 127 S.Ct. at 1966). Thus, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly,* 127 S.Ct. 1964-65 (citations omitted). And "even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Atherton v. District of Columbia Office of Mayor,* 567 F.3d 672, 681-82 (quoting *Iqbal,* 129 S.Ct. at 1950).

Section 1983 creates a cause of action against a "person" who, while acting pursuant to "any statute, ordinance, regulation, custom, or usage, of any State . . . or the District of Columbia" deprives an individual of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Plaintiff invoked the Constitution and 42 U.S.C. § 2000a (prohibiting discrimination in places of public accommodation). To establish a claim under §1983 against the District, plaintiff must allege that the individual wrongdoer–Officer Anderson–acted pursuant to an unconstitutional policy, practice or custom promulgated or

sanctioned by the municipality. *Daskalea v. District of Columbia*, 227 F.3d 433, 441 (D.C. Cir. 2000) (internal citations omitted); *Triplett v. District of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997); *Meyer v. Reno* 911 F. Supp. 11, 15 (D.D.C. 1996) (citing cases). Municipal liability cannot be based on a theory of *respondeat superior* or vicarious liability. *Iqbal*, 129 S.Ct. at 1948-49; *Graham v. Davis*, 880 F.2d 1414, 1421 (D.C. Cir. 1989) (citing *Monell v. Dep't. of Social Services of the City of New York*, 436 U.S. 658, 691 (1978)).

Plaintiff's allegations do not state or infer that Officer Anderson acted pursuant to District of Columbia policy or custom but rather suggest that Officer Anderson was working off-duty for Greyhound at the time of the incident. *See* Compl. at 10 ¶ ("The suspect who is the subject of this complaint apparently sought to enforce a mandate by the Greyhound Bus Company (an alleged private company)"; *id.* at 17 (questioning "whether it is appropriate for off-duty police officers to . . . utilize the police powers of the state in carrying out the duties of private clients"). Plaintiff has stated no facts to support a § 1983 claim against the movant. *Cf. Atherton*, 567 F.3d at 691 ("The facts alleged by Atherton do not support an inference of a course the city's 'policymakers consciously chose to pursue.'") (quoting *Triplett*, 108 F.3d at 1453). The District of Columbia's Rule 12(b)(6) motion to dismiss therefore is granted. A separate Order accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge